Complainant was the largest creditor of and also a stockholder in Chromocolor, Inc., which was in the hands of receivers. Defendant Cosmocolor Corporation was in a somewhat similar line of business and was interested in purchasing the assets of Chromocolor, Inc. This defendant made an agreement with complainant, by the terms of which complainant was to assign his claims against Kromocolor, Inc., to the defendant corporation, which claims were to be used in payment of the bulk of the purchase price in case the assets were bid in at a sale to be held by the receivers. In case the defendant corporation was successful in the purchase of the assets, certain stock and other consideration were to go to complainant. In case the defendant corporation should not be the successful bidder, the claims and stock were to be returned to complainant. Complainant executed an assignment to defendant corporation on the day of the sale. At *Page 545 
the sale defendant bid to the amount of $110,000, almost all of which was to be paid by turning in complainant's claim. A bid of $105,000 in cash was made for the assets and the court approved this cash bid as being more advantageous for the creditors. Complainant thereupon demanded a re-assignment of his claims and stock and brought the present suit, after defendant corporation refused to make a re-assignment. The defendant asserted by way of counter-claim that the failure of defendant to secure the assets on the sale was because of the acts of complainant and that complainant became liable for the expenses which defendant was put to in preparation for the sale.
The basis of the counter-claim is the assertion that complainant repudiated his agreement to join with defendant in providing the claims to be used on defendant's bid and thereby prevented defendant from being the successful bidder. There was a conflict of testimony as to what took place just before the sale but even if defendant's testimony is accepted, I do not consider that defendant has established a cause of action on its counter-claim.
From the testimony, it is possible and in fact probable that by the time of the sale, when complainant discovered that a cash offer was to be made for the assets, he considered it preferable that he should receive a large sum in cash for his claims rather than the stock of defendant which he would have received in case defendant's bid should be accepted. From the testimony it also seems probable that he expressed such a preference. However, this is immaterial, since complainant could not effectively have repudiated his agreement. On the very day of the sale complainant had executed an assignment of his claims to defendant and thereby ceased to have any control over their use by defendant in making its bid. Title was in defendant and it was in a position to convey irrespective of whether complainant refused his consent or not. In fact after the alleged repudiation and according to its own testimony, with knowledge thereof, defendant proceeded to bid complainant's claims at the sale. In other words, it considered any efforts of complainant to deny its right a nullity. In fact, it continued to bid until it became *Page 546 
the high bidder, although, as has been heretofore stated, the court considered the somewhat lower cash bid as being more advantageous. The acts of complainant, even accepting at full value the testimony of defendant, would therefore not be reason for the failure of defendant to secure the assets. Accordingly, complainant cannot be held responsible for the expenses which defendant incurred in preparation for the sale. Complainant had already completely carried out his contract by the execution of the assignment and his obligation to defendant thereupon ceased.
A decree will be advised dismissing the counter-claim.